IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Aric Sven,<br><br>                              Plaintiff,<br><br>            v.<br><br>Nedra Chandler Warden, Dixon Correctional<br>Center,<br><br>                              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 07 C 5952<br><br>    Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Petitioner Aric Sven ("Sven") was convicted of one count of child pornography in violation of 720 ILCS 5/11-20.1(a)(1)(vii) on January 19, 2005 in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois. In addition, he pled guilty to four misdemeanor counts of unlawful videotaping. Sven now petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 arguing that his child pornography conviction resulted from an unreasonable application of *New York v. Ferber*, 458 U.S. 747 (1982) and its progeny because the videos at issue contain mere nudity rather than child pornography and that the state court made an unreasonable determination of facts in finding that the videos constituted child pornography. For the reasons stated below, Sven's petition is denied.

## FACTS AND PROCEDURAL HISTORY

Sven mounted two hidden video cameras in his home bathroom - one aimed at approximately waist level and one pointing downward on the bathroom from a higher angle. Using these cameras, Sven videotaped his infant daughter's babysitter, then fourteen or fifteen years old, in the bathroom

unclothed bathing the infant. Sven specifically instructed the babysitter to bathe the baby and to get into the tub with the baby for safety reasons. These videotapes are the basis for Sven's child pornography conviction, which he now challenges.

Sven was charged in Lake County, Illinois with seven counts of child pornography in violation of 720 ILCS 5/11-20.1(a)(1)(vii) and four counts of unauthorized video recording in violation of 720 ILCS 5/26-4. Sven pled guilty to all four counts of unauthorized videotaping. The State dismissed four of the child pornography counts prior to trial and Sven proceeded to a bench trial on the remaining three counts. The trial judge acquitted Sven of two of the remaining three counts at the close of the State's case but convicted Sven of the last count of child pornography.

The issue at trial was whether the videos depicted the babysitter in a pose, posture or setting involving a lewd exhibition of her genitalia. Illinois courts apply a six-factor test, originally proposed in *United States v. Dost*, 636 F.Supp. 828 (S.D.Cal. 1986), in determining whether a visual depiction of a child constitutes the lewd exhibition of the genitals (The "*Dost* test" or "*Dost* factors"). *See People v. Lamborn*, 708 N.E.2d 350, 354 (Ill. 1999). They consider: "1) whether the focal point of the visual depiction is on the child's genitals; 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; 4) whether the child is fully or partially clothed, or nude; 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Id*. All of these factors need not be present in order for an image to be considered a lewd exhibition of the genitals. *See Id*. at 355 *citing United States v. Villiard*, 885 F.3d 117, 122 (3rd Cir. 1989). Rather, a determination

of whether an image is lewd involves analyzing the overall content of the image including the age of the child. *See Id.*

The trial court applied the *Dost* factors and in an oral decision found that: 1) although the genitals are not always the focal point of the tapes, there are multiple occasions where they are the focal point; 2) the setting was not sexually suggestive; 3) it was not natural for a naked fourteen or fifteen-year old girl to be holding a naked child, not her own; 4) the victim was completely nude; 5) it was not sure whether any of the victim's behaviors suggested sexual coyness and chose not to give the factor much weight; and 6) that the sixth factor is "an objective test based upon the subcommunity of pedophiles" and that a pedophile would be aroused by the videos in this case. As such, the trial court found that the first, third, fourth and sixth *Dost* factors were present. Sven was convicted of one count of child pornography and thereafter sentenced to eight years of imprisonment on the child pornography count to run concurrent to one year of imprisonment on the unauthorized videotaping counts. Sven has since served his prison sentence and is serving a term of supervised release in Illinois.

Sven appealed his conviction to the Illinois Appellate Court ("Appellate Court"), arguing that 1) the videotapes did not amount to child pornography because they contained only innocent, non-sexual conduct; 2) the Illinois legislature did not intend to include conduct such as Sven's under the child pornography statute because such conduct is already proscribed by the unauthorized videotaping statute; 3) the trial court erred in allowing evidence of the circumstances surrounding the production of the videotapes; and 4) Sven's eight year sentence was excessive. The Appellate Court affirmed Sven's conviction. Most notably, it conducted a *de novo* review as to whether the image at issue was lewd and therefore child pornography not protected by the First Amendment.

*See People v. Sven*, 848 N.E.2d 228, 232 (Ill.App.Ct. 2006).

The Appellate Court found that three of the six *Dost* factors were present and therefore that the videotape was lewd and qualified as child pornography within the Illinois statute. *Id*. at 240. Specifically, the Appellate Court found that portions of the video focused on the victim's genitalia (factor 1), that the victim was completely nude (factor 4) and that the depiction was intended to illicit a sexual response in the viewer (factor 6). *Id*. As to factor 6, the court found that the video was intended to illicit a sexual response because the video places the viewer in the role of a voyeur, thus sexualizing the images. *Id*. at 239. Notably, the court found that "the viewer stands in relation to the victim as would a peeping tom" and the victim does not in any way react to the cameras. *Id*. Based on these findings, the Appellate Court found that the video constituted a lewd exhibition of the genitals and thus constituted child pornography. *Id*. at 240. Also, the Appellate Court found that the trial court incorrectly relied on evidence as to how the video was produced in determining whether it was lewd but that this did not provide a basis for reversal following the Appellate Court's *de novo* review. *Id*. at 241.

Sven then filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois arguing that the Appellate Court failed to apply the proper objective standard in determining whether the images on the tapes constituted child pornography. The Illinois Supreme Court denied Sven's PLA. *See People v. Sven*, 861 N.E.2d 663 (table) (Ill. 2006). Sven did not pursue postconviction remedies in state court; instead, he filed the petition for writ of habeas corpus in this Court on October 22, 2007. He argues that 1) the Illinois Courts' conclusions that the videos depicted child pornography amounted to an unreasonable application of federal law as set forth in *New York v. Ferber*, 458 U.S. 747; and 2) the Illinois Courts' determinations of the fact were objectively

unreasonable. Sven does not raise claims related to his guilty pleas to unlawful videotaping.

## **STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief may be granted to a person in custody pursuant to the judgment of a state court only if the decision of the state court was 1) contrary to or an unreasonable application of federal law as clearly established by the Supreme Court or 2) an unreasonable determination of the facts in light of the evidence presented in the state court. *See* 28 U.S.C. § 2254 (d). The "unreasonable application" prong of AEDPA applies where a petitioner argues that a state court decision correctly identified the governing federal legal rule but unreasonably applied it to the facts of the case. *See Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001) *citing Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). "An unreasonable application of federal law is different from an incorrect application of federal law." *Id.* As such, a federal habeas court may not grant a petition of habeas corpus simply because it disagrees with a state court's application of clearly established federal law; rather it must find the application "so erroneous as to be unreasonable." *Id.* Put differently, a "state court decision is reasonable if it is 'minimally consistent with the facts and circumstances of the case.'" *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) *quoting Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999).

In addressing whether a state court rendered a decision based on an unreasonable determination of the facts, this Court presumes that factual determinations by state courts are correct absent clear and convincing evidence to the contrary. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The state court decision must be not only incorrect but also unreasonable. *See Ward v.*

*Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). "A state court decision that rests upon a determination of fact that lies against the clear weight of the evidence is, by definition, a decision 'so inadequately supported by the record' as to be arbitrary and therefore objectively unreasonable." *Id*. *quoting Hall v. Washington*, 106 F.3d 742, 749 (1997).

## DISCUSSION

### Procedural Default

The State argues that this Court may not consider Sven's claim that his conviction relies on an unreasonable application of *Ferber*, which it frames as Sven's First Amendment claim, because the claim has been procedurally defaulted. Specifically, the State asserts that Sven argued in state court only that the images did not satisfy the *Dost* factors as adopted by the Illinois courts. That is, he framed his argument solely as a question of state law and as such, he did not fairly present his federal claim to state courts and it is defaulted.

Before seeking a writ of habeas corpus in federal court, a state prisoner must exhaust available state remedies thereby giving the state courts "an opportunity to pass upon and correct" violations of federal rights. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) *quoting Duncan v. Henry*, 513 U.S. 364, 365 (1995). As such, the substance of a federal habeas corpus claim must first be presented to the state courts. *See Picard v. Connor*, 404 U.S. 270, 278 (1971). To provide such an opportunity, the state prisoner must "fairly present" the claim to the appropriate state courts. *See Baldwin*, 541 U.S. at 29. When a petitioner fails to fairly present a claim in state court, he procedurally defaults the claim. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

A petitioner fairly presents his federal claim to the state courts if he "articulates both the operative facts and controlling legal principles on which his claim is based." *Id*. at 519. The

petitioner need not cite "book and verse of the federal constitution" but must alert the state courts to the federal bases for his claim. *Id. citing Picard*, 404 U.S. at 278 and *Duncan*, 513 U.S. at 365-66. In determining if the state courts were made sufficiently aware of the federal claim, this Court considers whether the petitioner: 1) relied on federal cases that engage in constitutional analysis; 2) relied on state cases which apply a constitutional analysis on similar facts; 3) framed the claim in terms that call to mind a specific constitutional right; or 4) alleged a pattern of facts well within the mainstream of constitutional litigation. *See Id. citing Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004).

Sven discussed both state and federal law, including federal constitutional law as decided by the Supreme Court, in his brief filed with the Appellate Court. Sven began his argument relying extensively on the limitations on the definition of child pornography set by Supreme Court's decision in *New York v. Ferber* in arguing that the videos were not child pornography. He specifically cited to *Ferber* for the statement that child pornography is "a category of material outside of the protection of the First Amendment." Sven then went on to rely on both state and federal law in arguing that the videos do not constitute child pornography. As such, Sven specifically addressed the limitations the federal constitution places on the definition of child pornography and relied on constitutional law. Additionally, Sven relied extensively on *Lamborn*, 708 N.E.2d 350, an Illinois Supreme Court case which relies on federal law regarding the identification of child pornography including *Ferber*. In its opinion, the Appellate Court specifically addressed the limitations *Ferber* places on what may constitute child pornography. *See Sven*, 848 N.E.2d at 229, 235.

In his PLA to the Supreme Court of Illinois, Sven relied on *Ferber* and *Lamborn* in arguing

that constitutional limits exist on what constitutes child pornography outside of the protection of the First Amendment. Also notably, Sven specifically argued that the Appellate Court's decision "would have a chilling effect on First Amendment rights as it would leave the legality of every childish image subject to conjecture, whim and fantasy."

Therefore, Sven both relied on federal caselaw engaging in constitutional analysis as well as a cited provision of the federal constitution and specifically called the state Appellate and Supreme Courts' attention to the federal constitutional dimensions of the issue of whether his videos constituted child pornography. The state courts were given a fair opportunity to, and in the case of the appellate court did, address the federal issues that he now raises in this Court. Indeed, it was all but necessary for Sven to argue the constitutional aspects of his claims - as the appellate court stated, "in determining whether an image is lewd for the purpose of the child pornography statute, a court also necessarily is determining whether the image is not protected by the first amendment." *Id*. at 231. Therefore, this Court will consider Sven's argument that the Appellate Court's decision that his videos constituted child pornography was an unreasonable application of federal law.

**Unreasonable Application of Federal Law**

Sven argues that the Appellate Court unreasonably applied clearly established federal law in finding that the videotapes constituted child pornography. In this context, "clearly established federal law" refers only to holdings, not dicta, of the United States Supreme Court as of the time of the relevant state court decision. *See Carey v. Musladin*, 549 U.S. 70, 74 (2006). As such, where the Supreme Court has not made a holding squarely addressing the question at issue, there can be no unreasonable application of federal law. *See Id*. at 77 (state court could not unreasonably apply federal law due to lack of Supreme Court holding on issue); *Wright v. Van Patten*, 552 U.S. 120,

(2008) (no unreasonable application where Supreme Court had not squarely addressed nor given a clear answer regarding the relevant issue).

Under Supreme Court caselaw, the standard used to judge whether an item is "obscene" - "works which taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have any serious literary, artistic, political, or scientific value" - does not limit the states' ability to prohibit child pornography. *See Ferber*, 458 U.S. at 755, 760-61 *citing Miller v. California*, 413 U.S. 15, 24 (1973). Child pornography offenses must "be limited to works that visually depict sexually conduct by children below a specific age" and what constitutes "sexual conduct" must be "suitable limited and described." *Id*. at 764. The Supreme Court in *Ferber* upheld a New York statute describing such conduct as "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals." *Id*. at 765-66. Similarly, in *Osborne v. Ohio*, 495 U.S. 103, 113-114 (1990) the Supreme Court upheld an Ohio statute that, as interpreted by the Ohio Supreme Court, prohibited "the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged." *Id*. at 113-114 *citing State v. Young*, 525 N.E.2d 1363, 1368 (Ohio 1988); *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78-79 (1994) (statute that substituted "lascivious" for "lewd" not unconstitutionally vague or overbroad). Simple depictions of nudity without more, even in cases of children, however, constitute protected expression. *See Osborne*, 495 U.S. at 113 *citing Ferber*, 458 U.S. at 765, n. 18.

Sven argues that the Appellate Court misapplied *Ferber* in finding that his videos constituted

child pornography because the videos did not contain a "lewd exhibition of the genitals" but rather "mere nudity." The Supreme Court does not provide a definition of lewdness - it merely states that mere nudity cannot be proscribed, that is, "innocuous" images of unclothed children cannot be proscribed. *See Id*. at 112-114. Indeed, a precise definition or test for lewdness has not been set forth by the Supreme Court.[1] As such, the Appellate Court could not have unreasonably applied a Supreme Court test for lewdness. Thus, this Court must determine whether the Illinois Appellate Court reasonably applied clearly established federal law in finding that the videos at issue did not constitute mere nudity and therefore could be proscribed.[2]

The Appellate Court, applying the *Dost* test, undertook a several-factor analysis of whether the videos at issue involved a lewd exhibition of unclothed genitals. This Court's own review of the evidence confirms that it was not unreasonable for the court to find that the videos did not constitute "mere nudity." As discussed in more detail below, the videos at issue here do not involve a subject that is decidedly innocuous, rather they are videos of an unsuspecting teenage girl removing her clothes and bathing, often with a close-up of the lower half of her body, taken from the perspective of a leering peeping tom. This is not a situation which is clearly and only reasonably mere nudity that the Supreme Court intended to protect such as, for example, a parent's innocent picture of his or her baby in the bath. As such, this Court finds that the Appellate Court's decision did not amount

---

[1] As such, Sven's reliance on the *Dost* factors as applied in *Lamborn* for determination of whether an image is lewd is improper in this inquiry because *Dost* test is not clearly established federal law as set forth by the Supreme Court.

[2] A federal court reviewing a petition for writ of habeas corpus reviews the decision of the last state court to rule on the merits of the issue. *See Schultz*, 313 F.3d at 1015. The Illinois Appellate Court was the last state court to rule on the issue of whether the videos at issue constituted child pornography because the Illinois Supreme Court summarily denied Sven's PLA.

to an unreasonable application of clearly established federal law as dictated by the Supreme Court.

**Unreasonable Determination of the Facts**

Sven also argues that the Appellate Court's determinations on two of the *Dost* factors and its overall decision that the videos included a lewd exhibition of the genitals and thus fell within the definition of child pornography constituted an unreasonable factual determination. Specifically, he argues that it was unreasonable for the Appellate Court to determine both that the video focused on the victim's genitalia and that it was intended to illicit a sexual response.[3] As to the first factor, Sven argues that the camera does not focus on the victim's genitals but rather that "only the area where her legs join her torso" is visible and that any footage of her genitals appears unfocused or shadowed.

As stated above, in relevant part, habeas relief will not be granted unless the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009). With regard to a state appellate court's determination of facts, the Court "presume[s] state factual findings to be correct, unless the petitioner rebuts the presumption by clear and convincing evidence." *Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1) and *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)).

In making its factual determination that the video at issue focuses on the victim's genitals, the Illinois Appellate Court relied on the images displayed in the video itself. The video, for the most part, displays the lower half of the victim's body and the frame often focuses only on her

---

[3] Sven does not dispute the Appellate Court's finding that the victim was completely nude in the videos.

genital area and buttocks. The camera is located near the floor and films upward. While standing in front of the camera with only the lower half of her body in the frame, the victim both undresses and dresses and stands legs apart with one leg presumably up on the counter for a prolonged period of time while she cares for the baby. After reviewing the video, the Appellate Court found that the images on the tape, by virtue of their composition, specifically directed the viewer's attention to the victim's genitals. (Resp. Ex. D at 6.) Because the Court presumes the factual findings of the state court are correct and will only overturn a state court's factual finding if clear and convincing evidence demonstrates that the finding was unreasonable, *Ben-Yisrael*, 540 F.3d at 546, the Court concludes that the Illinois Appellate Court's conclusion that the videotape focused on the victim's genitalia was not unreasonable.

Sven also argues that the Illinois Appellate Court unreasonably concluded that the video was intended to solicit a sexual response. Specifically, he argues that the Appellate Court concocted its own theory to analyze the issue, focusing on the "point of view" from which the image invites the viewer to see it, and in doing so, failed to properly consider whether the video was designed or intended to elicit a sexual response in the viewer. Sven further asserts that the video itself demonstrates that it was not designed or intended to elicit a sexual response.

As an initial matter, in challenging the Appellate Court's determination that the video was designed to illicit a sexual response, Sven is not simply challenging the Appellate Court's factual findings, he is also challenging the court's analysis and ultimate conclusion that the video was designed to illicit a sexual response. To the extent that Sven asserts the Illinois Appellate Court applied the wrong approach in reaching its conclusion that the video was designed to illicit a sexual response under *Dost*, his assertion fails because he has not set forth any evidence or argument that

the Appellate court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. *See Lopez v. Thurmer*, 573 F.3d 484, 489 (7th Cir. 2009). Furthermore, even if the Illinois Appellate Court had applied the wrong methodology in deciding whether the video was designed to illicit a sexual response, it is not the court's methodology but its result that the Court reviews to determine whether its judgment was so infirm as to require the issuance of a federal writ of habeas corpus. *See Lopez*, 573 F.3d at 493; *see also Malinowski v. Smith*, 509 F.3d 328, 339 (7th Cir. 2007) (affirming the denial of a petition for habeas corpus because "even if the [state] Court of Appeals had applied the wrong standard, the proper standard results in the same conclusion.").

To the extent that Sven challenges the factual findings of the Appellate Court, his assertion fares no better. In support of its factual finding that Sven's videos were voyeuristic and intended to solicit a sexual response, the Illinois Appellate Court provided a detailed explanation:

> Essentially, the tape places the viewer in the role of voyeur. There is no narrative or plot. The images are not a scene connected to anything else. In watching the tape, the viewer stands in relation to the victim as would a peeping tom. This point of view is reinforced by the fact that the victim does not react to the camera whatsoever . . . . [W]here, as here, the viewer is placed in the point of view of a voyeur, that the images are candid contributes to their lewdness. Because the victim does not react, the image creates a sense of covert observation that would not otherwise exist.
>
> Voyeurism is sexually motivated conduct, and it is recognized as deviant behavior. Thus, by placing the viewer in the role of voyeur, the images become sexualized. Moreover, they are sexualized in a way consistent with deviant behavior.
>
> [These images do not] bear any similarities with the sort of photograph a parent might take of a young child bathing. [They are] different because [they] place[] the viewer in the position of a voyeur rather than that of a parent observing a young child bathing . . . .

(Resp. Ex. D at 11-12.)  Sven's blanket assertion that "[t]here was simply no basis for the finding that the image, by virtue of its perspective, resulted in a heightened sexuality that was not otherwise present" does not constitute clear and convincing evidence that videos were not intended to illicit a sexual response and is therefore insufficient to rebut the presumption that the Illinois Appellate Court's findings are correct.

On the whole, Sven has not produced clear and convincing evidence that would rebut the presumption in favor of the state appellate court's factual findings.  Therefore, the factual findings of the Illinois Appellate Court did not constitute an unreasonable application of the facts based on the record.

## CONCLUSION AND ORDER

For the reasons stated above, Sven's petition for writ of habeas corpus is denied

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:   October 15, 2009